HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CENTRAL FLYWAY AIR, INC., and JON BOYCHUK,<br>Plaintiffs,<br>v.<br>GREY GHOST INTERNATIONAL, LLC.,<br> Defendants,<br>_____<br>GREY GHOST INTERNATIONAL, LLC, and GREY GHOST GEAR OF CANADA, LTD.<br>Counter-Plaintiffs,<br>v.<br>JON BOYCHUK et al.,<br>Counter-Defendants | CASE NO. 3:20-cv-05506-BJR<br><br>ORDER GRANTING COUNTER-PLAINTIFFS' MOTION FOR SANCTIONS: ENTRY OF DEFAULT JUDGMENT |

## I.    INTRODUCTION

This matter comes before the Court on the Motion for Order to Show Cause ("OSC Motion"), filed by Defendants/Counter-Plaintiffs Grey Ghost International, LLC ("GGI") and Grey Ghost Gear of Canada, Ltd. ("GGGC") ("Counter-Plaintiffs"). After several rounds of motions to dismiss and for summary judgment, the original claims of Plaintiffs/Counter-Defendants Central Flyway Air, Inc. and Jon Boychuk ("Counter-Defendants") have been dismissed, and only discrete issues on Counter-Plaintiffs' claims, including damages, remain for trial. *See, e.g.*, Order Granting Defendant's Motion for Summary Judgment, Dkt. No. 99; and Order Granting in Part and Denying in Part Counter-Claimants Motion for Summary Judgment, Dkt. No. 108. In its OSC Motion,

Counter-Plaintiffs seek an order entering default judgment on those remaining issues, or other sanctions against Counter Defendants, for failure to comply with a Court-ordered deadline. On August 28, 2023, the Court ordered Counter-Defendants to show cause why default should not be entered on the remaining issues in this case. *See* Minute Order, Dkt. No. 115. Counter-Defendants filed a response, as ordered, on September 1; and Counter-Plaintiffs filed their reply on September 5. Having reviewed the briefs filed in support of and in opposition to that OSC Motion, the Court rules as follows.

## II.    BACKGROUND

This matter was filed over three years ago, and involves a commercial dispute between and among the several parties. *See* Order Granting Defendant's Motion for Summary Judgment at 2-9. Discovery closed in October 2021, and as noted, the Court has already ruled on several dispositive motions. According to Counter-Plaintiffs (and undisputed by Counter-Defendants), all that remains for trial is determination of "(1) whether Central Flyway Air is also liable (along with its co-defendants) under GGGC's breach of fiduciary duty, civil conspiracy, unjust enrichment and conversion claims, (2) the scope of Mr. Boychuk's breach of fiduciary duty, and (3) the amount of damages owing to GGGC." OSC Motion at 2.

Motivated by the limited scope of the remaining issues, Counter-Plaintiffs moved for an order directing the parties to participate in mediation. *See* Motion for Order Referring Case to Mediation and Setting Trial Date, Dkt. No. 111. Counter-Defendants did not file a response to that motion, which the Court granted on May 25, 2023, ordering that the "parties shall participate in mediation, to be scheduled to take place **within 90 days of the date of this order,**" making that deadline August 23, 2023. Dkt. No. 112 at 2 (emphasis in original). The Court also scheduled the jury trial to begin on September 25, 2023, and ordered the parties to file motions in limine by September 1, 2023 and a joint pretrial statement by August 28, 2023.

ORDER GRANTING COUNTER-PLAINTIFFS' MOTION FOR
ENTRY OF DEFAULT JUDGMENT -2

The OSC Motion outlines Counter-Plaintiffs' attempts, over the last several months, to obtain cooperation in scheduling the Court-ordered mediation. Beginning on June 1, 2023, Counter-Plaintiffs' counsel Loren Cochran sent counsel for Counter-Defendants, Eric Helmy, an email asking Helmy for dates on which his clients were available, and the names of preferred mediators. *See* Cochran Decl., Dkt. No. 114, Exs. 1-3. Helmy responded "will do," but did not send Cochran a list of mediator names until June 16, and did not provide his or his clients' available dates at that time. *Id.*, Ex. 1. Instead, Helmy sent Cochran an email saying he would "circle back with my clients by Monday and strongly recommend mediation," which at that point *had already been ordered by the Court*. *Id.*

Apparently, Helmy did not get back to Cochran, who subsequently sent Helmy a list of over a dozen proposed mediators, each with several weeks' worth of available dates. Helmy deflected Cochran's direct inquiries about availability, again saying he would "circle back" with his clients. On July 7, Cochran sent Helmy another email, memorializing multiple failed attempts to reach Helmy by telephone. On July 18, having still not received any meaningful cooperation from Helmy, Cochran advised Helmy of his intent to seek relief from the Court. *Id.*, Ex. 2. On July 19, Helmy sent Cochran a list of dates his clients were "not available," including every date from July 17 through October 2. The list, however, is ambiguous, and in any event did not apparently indicate any dates on which his clients *were* available. Cochran asked for clarification, but receiving none— or apparently any response at all—Counter-Plaintiffs filed the instant motion on August 25, 2023, seeking an entry of default against Counter-Defendants for failure to cooperate in compliance with the Court-ordered mediation deadline.

## III.    DISCUSSION

Federal Rule 16(f)(1)(C) provides "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." The referenced subsection of Federal Rule 37 includes

ORDER GRANTING COUNTER-PLAINTIFFS' MOTION FOR
ENTRY OF DEFAULT JUDGMENT -3

"rendering a default judgment against the disobedient party." The Ninth Circuit has identified five factors that a district court must consider before dismissing a case or declaring a default: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (citing *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990)). Dismissal or default is a harsh penalty imposed only in extreme circumstances, and requires a finding that the party's violations of the court's order were due to willfulness or bad faith. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992), *Dreith*, 648 F.3d at 788. The Circuit Court, however, "will overturn a dismissal sanction only if we have a 'definite and firm conviction that it was clearly outside the acceptable range of sanctions.'" *Dreith* at 788 (citation omitted).

Following a review of the record, the Court finds that four of the five factors prescribed by the Ninth Circuit weigh in favor of the sanction of default against Counter-Defendants on the remaining issues in this case. Both (1) the public's interest in the expeditious resolution of this case, and (2) the Court's need to manage its docket strongly favor this course. This case was filed over three years ago, and Counter-Defendants have consistently engaged in dilatory and frivolous tactics requiring Court intervention, including missing several Court- and Federal Rule-imposed deadlines, requesting numerous continuances of deadlines, and filing an ill-conceived appeal, prior to final judgment, that was dismissed for lack of jurisdiction and failure to prosecute. *See, e.g.,* Order to Show Cause, Dkt. No. 35; Order on Motion to Strike, Dkt. No. 60; Motions to Continue, Dkt. Nos. 22, 37, 62, 77; Mandate, Dkt. No. 107.

The Court also finds that (3) the risk of prejudice to Counter-Plaintiffs here is great. Trial is currently scheduled to begin in fewer than three weeks, and counsel for Counter-Defendants has engaged in a course of glib and obviously deliberate avoidance, whether or not at the direction of his clients. *See* Cochran Decl., Exs. 1-3. Forcing Counter-Plaintiffs to prepare for a mediation or trial at

ORDER GRANTING COUNTER-PLAINTIFFS' MOTION FOR
ENTRY OF DEFAULT JUDGMENT -4

1

2   which Counter-Defendants will likely not appear would be a misuse of Counter-Plaintiffs' time and

3   money. Furthermore, while (4) public policy favoring disposition of cases on their merits usually

4   counsels against entry of default judgment, the bulk of the substantive issues in this case has already

5   been resolved through motions practice. *See* Orders on Summary Judgment, Dkt. Nos. 99 and 108.

6   This factor, therefore, does not weigh as heavily against default as it ordinarily might.

7          Finally, the Court concludes that (5) less drastic sanctions are not available to remedy the

8   injustice and delay already caused by Counter-Defendants' behavior, let alone that which might be

9   caused if Counter-Plaintiffs were forced to move ahead with trial. Indeed, it is not clear what lesser

10  sanctions might even be available, given that discovery has closed, Counter-Defendants have

11  ignored the Court's mediation deadline, and trial is scheduled to begin in mere weeks. And the fact

12  that Counter-Defendants are residents of Canada, and have so casually ignored the Court's

13  deadlines, suggests that Counter-Plaintiffs would have little luck collecting any monetary sanctions

14  the Court might impose.

15         "[A]n important factor in considering the appropriateness of sanctions and availability of

16  lesser alternatives is the existence of plausible explanations or excuses provided by the disobedient

17  party." *Advanced RPO LLC v. JH Cap. Grp. Holdings, LLC*, 2019 WL 1397219, at *2 (C.D. Cal.

18  Feb. 26, 2019) (citing *In re: Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1228

19  (9th Cir. 2006). Counter-Defendants' response to the OSC Motion fails to explain, let alone justify,

20  their utter failure to act in compliance with this Court's May 25 order regarding the mediation

21  deadline. The only "excuse" offered for failure to comply is that "[a]s it happened, Jon Boychuk

22  took a new job in the middle of July and . . . would be almost entirely unavailable until late

23  September." Counter-Defs.' Opp. at OSC Mot. at 2. Counter-Defendants have not explained *how*

24  taking a new job in mid-July rendered compliance with this Court's order impossible, nor do they

25  explain their failure to make any apparent effort to comply with the order in the seven weeks prior

26  to that. More concerning still, they have also not explained how they may have intended to comply

ORDER GRANTING COUNTER-PLAINTIFFS' MOTION FOR
ENTRY OF DEFAULT JUDGMENT -5

not only with the mediation deadline, which has now passed, *but with the September trial date itself*, given Boychuk's purported unavailability through the end of the month. There is no indication that Counter-Defendants had any intent to seek a continuance of either the mediation deadline or trial. Given Counter-Defendants' casual attitude towards these dates, the Court has no confidence that Counter-Defendants in fact have had any intent of showing up for that trial.

Court-ordered deadlines and trial dates are not optional. A "new job" does not justify blatant disregard of this Court's time or opposing counsel's efforts. Counter-Defendants' only substantive suggestion is that "the Court continue the trial date for so long a period of time as is reasonably required to allow the parties to participate in mediation, factoring in the limitations of Mr. Boychuk's work schedule," offering no assurances that Boychuk would comply with any trial date or other deadline at this point. Counter-Defs.' Opp. at 2. In any event, 90 days was more than sufficient time for Counter-Defendants, had they been acting in good faith, to have cooperated in finding a mutually agreeable time for mediation, *or at the very least, to have moved for a continuance*. It is clear from the record, however, that Counter-Defendants have not been acting in good faith.

Accordingly, the Court finds that Counter-Defendants have failed to show cause why default judgment should not be entered against them. The Court grants Counter-Plaintiffs' OSC Motion and will enter default judgment against Counter-Defendants on the remaining issues in this case. Counter-Plaintiffs are directed to file, no later than 10 days from the date of this order, a proposed order effecting the Court's intent to enter default as expressed herein, and a corresponding proposed judgment. In addition, the filing shall include all necessary evidentiary support for the proposed judgment.

SO ORDERED. DATED this 6th day of September, 2023.

1

2

Barbara Jacobs Rothstein
3          U.S. District Court Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING COUNTER-PLAINTIFFS' MOTION FOR
ENTRY OF DEFAULT JUDGMENT -7