HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CENTRAL FLYWAY AIR, INC., and JON BOYCHUK,<br>　Plaintiffs,<br>v.<br>GREY GHOST INTERNATIONAL, LLC.,<br>　Defendants,<br><br>GREY GHOST INTERNATIONAL, LLC, and GREY GHOST GEAR OF CANADA, LTD.<br>　Counter-Plaintiffs,<br>v.<br>JON BOYCHUK et al.,<br>　　　　Counter-Defendants | CASE NO. 3:20-cv-05506-BJR<br><br>ORDER DENYING COUNTER-DEFENDANTS' MOTION TO SET ASIDE FINAL JUDGMENT |

## I.　INTRODUCTION

This matter comes before the Court on the Motion to Set Aside Final Judgment, filed by Plaintiffs/Counter-Defendants Central Flyway Air, Inc., ("CFA") Jon Boychuk, and Milburn Mountain Defense (collectively "Counter-Defendants"). Dkt. No. 128. The judgment that Counter-Defendants seek to have set aside was entered against them pursuant to an entry of default. Dkt. No. 124. That default, in turn, was entered pursuant to the Court's Order Granting the Motion for Sanctions ("Default Order"), Dkt. No. 118, which motion was filed by Counter-Plaintiffs Grey Ghost International LLC ("GGI") and Grey Ghost Gear of Canada, LTD ("GGGC") (collectively "Counter-Plaintiffs"). The judgment was rendered in favor of Counter-Plaintiffs, and awarded them

ORDER DENYING COUNTER-DEFENDANTS'
 MOTION TO SET ASIDE JUDGMENT -1

a total of approximately $3.1 million. Having reviewed the briefs and exhibits filed in support of and in opposition to the instant Motion to Set Aside Final Judgment, the Court finds and rules as follows.

## II. BACKGROUND

This lawsuit arose out of a business dispute between and among the several parties. After Boychuk and CFA filed their complaint alleging breach of contract and unjust enrichment against GGI, GGI and GGGC (*i.e.*, Counter-Plaintiffs) filed several counterclaims against Boychuk and CFA (*i.e.*, Counter-Defendants), including for unjust enrichment and breach of fiduciary duty. On September 28, 2022, the Court granted GGI's Motion for Summary Judgment, dismissing all of CFA and Boychuk's claims against it, finding that "[t]he record presented by [Boychuk and CFA] in support of their claims is woefully inadequate to survive summary judgment." Dkt. No. 99 at 10. On December 28, 2022, the Court granted in part Counter-Plaintiffs' Motion for Summary Judgment on several of the counterclaims against Counter-Defendants. Dkt. No. 108. The Court found questions of fact remained on several discrete issues of liability, and on the proper calculation of damages Counter-Defendants owed to Counter-Plaintiffs. On May 25, 2023, on an unopposed motion by Counter-Defendants, the Court ordered the parties to mediation, setting a deadline of 90 days, or until August 23, 2023. Dkt. No. 112.

Despite diligent attempts by counsel for Counter-Defendants, counsel for Counter-Plaintiffs, Eric Helmy, advised Counter-Defendants that his clients "were simply not available within the time frame the Court had set," because "[a]s it happened, Jon Boychuk took a new job in the middle of July" and "would be almost entirely unavailable until late September." Counter-Defs.' Opp., Dkt. No. 116 at 2. After failing to schedule the court-ordered mediation, and with a trial date of September 25, 2023 approaching, Counter-Plaintiffs filed a Motion for Sanctions, seeking entry of default against Counter-Defendants based on their failure to comply with the Court-ordered deadline.

On September 6, 2023, the Court granted Counter-Plaintiffs' motion and on October 5, entered a default judgment against Counter-Defendants. In granting Counter-Plaintiffs' Motion for Sanctions and entering default, the Court found that a "'new job' does not justify blatant disregard of this Court's time or opposing counsel's efforts," and concluded that "the risk of prejudice to Counter-Plaintiffs here is great. Trial is currently scheduled to begin in fewer than three weeks, and counsel for Counter-Defendants has engaged in a course of glib and obviously deliberate avoidance, whether or not at the direction of his clients." Default Order at 6, 4. Counter-Defendants had "casually ignored the Court's deadlines," had exhibited a "blatant disregard of this Court's time or opposing counsel's efforts," and had done so in bad faith. *Id*. The Court found particularly "concerning" Counter-Defendants' assertion that Boychuk would not be available during the week trial was scheduled to take place, when no continuance had been sought or granted, finding that Counter-Defendants apparently had little intention of attending or participating in the trial. Default Order at 5-6. As noted, the Court had already resolved most of the questions of liability on summary judgment, leaving primarily the question of damages for default. After reviewing Counter-Plaintiffs' proposed judgment and the evidence filed in support thereof, including the expert opinion of a forensic accountant and hundreds of pages of supporting documentation (to which Counter-Defendants filed no response), the Court awarded Counter-Plaintiffs approximately $3.1 million. *See* Default Order; Final Judgment, Dkt. No. 124; J. Smith Decl., Dkt. Nos. 121, 122 and exhibits thereto.

Counter-Defendants did not move for reconsideration, did not file an objection to Counter-Plaintiffs' proposed judgment, and in the instant motion, have not taken issue with any of the Court's findings or conclusions. Instead, they now move to have the default judgment set aside based on the assertion that Helmy has Attention Deficit Hyperactivity Disorder ("ADHD"), and that during the relevant time period, April 2023-September 2023, he was unable to reliably access Vyvanse, the medication he was taking to relieve the symptoms of ADHD, at his local pharmacy due to a "national shortage." Counter-Defendants claim the under-treated symptoms of Helmy's

ORDER DENYING COUNTER-DEFENDANTS'
 MOTION TO SET ASIDE JUDGMENT -3

ADHD "impacted his ability to perform tasks related to management of the present lawsuit, including compliance with the Court's May 2023 order." Mot. at 4 (citing Helmy Decl., ¶ 5; Barhoum Decl. ¶ 5, Ex. 3). According to Daniel Bristow, M.D., a psychiatrist retained to provide an expert opinion, under these circumstances Helmy "would have struggled with '[a] failure to pay close attention to details in work, difficulty sustaining attention, inability to follow through on instructions, difficulty organizing and prioritizing work, losing or misplacing items necessary for task completion, being easily distracted by extraneous stimuli, and being forgetful in daily work activities.'" *Id*. at ¶ 5, Ex. 2, p. 3. I.

### III. DISCUSSION

Counter-Defendants' motion is brought under Federal Rule 60(b)(1), which provides, in relevant part, that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment . . . for the following reasons: . . . mistake, inadvertence, surprise, or excusable neglect."[1] Counter-Defendants argue they are entitled to have the default judgment against them set aside based upon "excusable neglect." Determining whether neglect is excusable is an equitable inquiry that depends on: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000) (citing *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395 (1993). As discussed below, the Court concludes that the weight of these factors supports denying Counter-Defendants' motion.

---

[1] Counter-Defendants also seek relief under Federal Rule 60(b)(6), which authorizes setting aside a judgment for "any other reason that justifies relief." That catchall provision is "only available where the other subsections of Rule 60(b) do not apply." *Williams v. City of Erie Police Dep't*, 639 F. App'x 895, 898 (3d Cir. 2016). The reason given for the neglect at issue in this motion—counsel's inability to reliably access his ADHD medication—falls squarely within the category of excusable neglect provided by subsection 60(b)(1). *See, e.g., Days Inn Worldwide, Inc. v. Neil Kamal, Inc.*, 2022 WL 17340685, at *3 (D.N.J. Nov. 30, 2022) (The moving party's "attorney's personal challenges [] falls under the "excusable neglect" umbrella."). The Court therefore disregards Counter-Defendants' attempt to rely on subsection 60(b)(6) (which in any event adds nothing to the analysis) and analyzes the motion under Rule 60(b)(1) only.

ORDER DENYING COUNTER-DEFENDANTS'
 MOTION TO SET ASIDE JUDGMENT -4

### A. Danger of Prejudice to Opposing Party

This factor weighs strongly in favor of denying Counter-Defendants' motion. In its Default Order, the Court outlined the prejudice already caused Counter-Plaintiffs by Counter-Defendants' dilatory behavior:

> [T]he risk of prejudice to Counter-Plaintiffs here is great. Trial is currently scheduled to begin in fewer than three weeks, and counsel for Counter-Defendants has engaged in a course of glib and obviously deliberate avoidance, whether or not at the direction of his clients. Forcing Counter-Plaintiffs to prepare for a mediation or trial at which Counter-Defendants will likely not appear would be a misuse of Counter-Plaintiffs' time and money.

Default Order at 4-5 (citations omitted). The risk of prejudice to Counter-Plaintiffs caused by Counter-Defendants' dilatory behavior has only grown since the Court issued the Default Order.

The cases that Counter-Defendants cite for the proposition that delay alone is not sufficient grounds for denying a Rule 60(b) motion are unpersuasive, as they concern matters that were delayed for mere weeks. *See, e.g.*, Pl.'s Mot. at 6 (citing, inter alia, *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir.1988) (rejecting claim of prejudice from two-week delay between entry of default judgment and filing Rule 60 motion)). As discussed more fully below, the delay here amounts to over a year. Furthermore, delay is not the only prejudice Counter-Plaintiffs have suffered, as they have invested substantial resources and effort in simply getting Counter-Defendants to comply with deadlines in this case, *see infra* § III.B., including having to respond to this motion well after they had every reason to believe the judgment was final. The unfairness to Counter-Plaintiffs that would result from setting aside the judgment at this point is manifest.

### B. Length of Delay and Potential Impact on Proceedings

Counter-Defendants attempt to characterize the relevant delay as the time between entry of the judgment and the filing of this motion, and assert that this delay of some six months would have a minimal impact on these proceedings. By any appropriate measure, however, Counter-Defendants' failure to comply with the rules and deadlines in this case has delayed resolution of this

ORDER DENYING COUNTER-DEFENDANTS'
MOTION TO SET ASIDE JUDGMENT -5

matter by nearly a year or more; mediation was ordered well over a year ago, in May 2023, and scheduled to take place before August 23, 2023; trial was to begin September 25, 2023. Counter-Defendants' attempts to minimize the length of delay, repeatedly referring to it as six months, ignore the true impact of their failure to timely comply with the requirements of this litigation.

Regardless of how the length of delay is measured, the Court rejects Counter-Defendants' assertion that the impact on judicial proceedings has been "minimal." *See* Counter-Defs.' Mot. at 7. In addition to the delay in resolution of this case already discussed, throughout this litigation Counter-Defendants have engaged in tactics that have required court intervention on multiple occasions. As the Court observed in its Default Order, "the Court's need to manage its docket strongly favors [the sanction of default]. This case was filed over three,"—now over four—"years ago, and Counter-Defendants have consistently engaged in dilatory and frivolous tactics requiring Court intervention, including missing several Court- and Federal Rule-imposed deadlines, requesting numerous continuances of deadlines, and filing an ill-conceived appeal, prior to final judgment, that was dismissed for lack of jurisdiction and failure to prosecute." Default Order (citing Order to Show Cause, Dkt. No. 35; Order on Motion to Strike, Dkt. No. 60; Motions to Continue, Dkt. Nos. 22, 37, 62, 77; Mandate, Dkt. No. 107). What was true in September 2023 is all the more so now. The long history of Counter-Defendants' frivolous and dilatory approach to prosecuting this case strongly favors denying their motion.

C.  *Reason for Delay*

Counter-Defendants have failed to demonstrate that the proffered reason for delay constitutes excusable neglect. First of all, it is not clear from the evidence submitted that the symptoms of Helmy's condition actually prevented him from performing his obligations as Counter-Defendants' attorney. Bristow's opinion states only that "the condition of severe[2] ADHD *would limit* [Helmy's] executive function and cognitive abilities to complete tasks necessary in

---

[2] It is not evident from the record that Helmy's ADHD was in fact "severe." *See, e.g.*, Barhoum Decl., ¶ 2 ("Upon assignment of this case, and discussing the entry of default with Mr. Helmy, we learned that Mr. Helmy has ADHD.").

ORDER DENYING COUNTER-DEFENDANTS'
 MOTION TO SET ASIDE JUDGMENT -6

following the Court Order in a timely manner, particularly if there were periods of time when his treatment (i.e., Vyvanse) for ADHD were not consistently available." Ex. 3 at 3 ("common symptoms of untreated or ineffectively-treated ADHD *that would prevent* Mr. Helmy from completing tasks necessary to follow the Court Order include failure to pay close attention to details in work, difficulty sustaining attention, inability to follow through on instructions," etc.) (emphases added). These observations, stated in a hypothetical tense, are not specific to Helmy's case at all, but are merely generic observations regarding the possible symptoms of inadequately treated ADHD. Ex. 3 to Barhoum Decl., at 3 (citing the American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, 5th Edition - Text Revision published in 2022). Helmy himself testifies only that "[w]hen I did not have access to my medication, I was not able to effectively manage the symptoms of my ADHD, which in turn negatively impacted my handling of the present case." Helmy Decl., ¶ 5. He provides no details regarding what form that negative impact took, or how it actually prevented him from complying with the Court's orders. Helmy Decl., ¶ 5. Helmy does not explain, for example, how his condition caused the failure to respond to opposing counsel's repeated and diligent attempts to identify a mediator and schedule a mediation; to obtain information from his clients regarding their availability; or to impress upon his clients the importance of adhering to court orders and making themselves available for court-ordered appearances. Moreover, the evidence does not support the conclusion that his symptoms prevented him from seeking and obtaining substitute counsel, as the Rules of Professional Conduct would have obligated him to do. *See* WA RPC 1.16 (providing "a lawyer . . . shall . . . withdraw from the representation of a client if . . . the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client"); *see also, e.g., Carcello v. TJX Companies, Inc.*, 192 F.R.D. 61, 65 (D. Conn. 2000) (denying Federal Rule 60 motion to set aside judgment based on counsel's illness, noting that under rules of profession conduct, "if an illness interferes or potentially interferes with counsel's competence, diligence, and effective representation of a client, the prudent and professionally responsible attorney must make alternative arrangements for his clients and withdraw

ORDER DENYING COUNTER-DEFENDANTS'
 MOTION TO SET ASIDE JUDGMENT -7

from their representation until such time as he is able to provide competent, diligent, and effective representation."). The Court does not doubt that Helmy has ADHD, that he had difficulty accessing appropriate medication during the relevant time period (although he does not discuss what efforts were in fact made), or that that difficulty had some degree of "negative impact" on his ability to represent his clients. What Helmy has failed to provide is the causal link between his condition and his failure to comply with this Court's deadlines.

Perhaps more importantly, the proffered testimony does little to explain how Helmy's condition prevented *his clients* from fulfilling their duties in this litigation. Indeed, it is evident from the record before the Court that a large share of the fault lies with the clients themselves. In other words, even if Helmy had met all of the obligations required of him in representing his clients, it seems apparent from the record before the Court that Counter-Defendants still would not have complied with the Court's deadlines. The ultimate reason for Counter-Defendants' failure to comply with the Court's order is the purported unavailability of Counter-Defendants, and specifically Jon Boychuk, during the relevant time period. *See* Default Order, at 3 ("On July 19, Helmy sent [Counter-Plaintiffs' attorney] Cochran a list of dates his clients were "not available," including every date from July 17 through October 2."). Of particular concern to the Court, counsel's correspondence makes it clear that Boychuk would not be available for the trial, which was scheduled to begin on September 25, 2023. By as late as mid-August, Counter-Defendants nevertheless had given no indication of any intent to seek a continuance, and have failed to explain, even now, how they intended to comply with the trial date, which had been set months earlier and already once continued from the original date of March 2022. Critically for purposes of this motion, it was Counter-Defendants themselves, and not their counsel, who had made themselves "not available" for trial. It is apparent that Helmy's clients were casually treating the Court's mediation and trial deadlines as suggestions. Counter-Defendants' motion fails to address, let alone justify, *this* reason for the delay.

ORDER DENYING COUNTER-DEFENDANTS'
 MOTION TO SET ASIDE JUDGMENT -8

### D. Whether Movant Acted in Good Faith

The Court has already determined that Counter-Defendants have not acted in good faith, a conclusion on which this motion fails to cast doubt. *See* Default Order at 6. The Court acknowledges that suffering from under-treated symptoms of ADHD might well have made it difficult for Helmy to meet many of the demands of this litigation. Nevertheless, even taking Helmy's assertions as true and construing all allegations in Counter-Defendants' favor, it remains undisputed in the record that Counter-Defendants were aware they had been ordered to participate in mediation by a date certain, and were aware of the impending pretrial deadlines and the trial date of September 25, 2023, and yet by all appearances had no intention of making themselves available to participate in either the mediation or the trial. Counter-Defendants' total and inexcusable disregard of this Court's and the opposing parties' time and resources—as indicated in particular by their clear intent to essentially ignore the impending trial deadlines—is manifest bad faith.

The Court's observation from the Default Order remains an apt summary:

> Court-ordered deadlines and trial dates are not optional. A "new job" does not justify blatant disregard of this Court's time or opposing counsel's efforts. Counter-Defendants' only substantive suggestion is that "the Court continue the trial date for so long a period of time as is reasonably required to allow the parties to participate in mediation, factoring in the limitations of Mr. Boychuk's work schedule," offering no assurances that Boychuk would comply with any trial date or other deadline at this point. Counter-Defs.' Opp. at 2. In any event, 90 days was more than sufficient time for Counter-Defendants, had they been acting in good faith, to have cooperated in finding a mutually agreeable time for mediation, or at the very least, to have moved for a continuance. It is clear from the record, however, that Counter-Defendants have not been acting in good faith.

Default Order at 6. Nothing in the instant motion alters this conclusion. Weighing these equitable factors prescribed under Federal Rule 60(b)(1), the Court concludes that Counter-Defendants are not entitled to have the judgment set aside.

### III. CONCLUSION

For the foregoing reasons and for the reasons set forth in the Default Order, the Court DENIES Counter-Defendants' Motion to Set Aside Final Judgment.

SO ORDERED. DATED this 31st day of July, 2024.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge